**Ken DAVIS, Plaintiff,**

v.

**STRATA CORPORATION, a North Dakota corporation, Defendant.**

**No. A4–01–83.**

United States District Court, D. North Dakota, Northwestern Division.

Jan. 24, 2003.

Larry M. Baer, West Des Moines, IA, for Plaintiff.

Allen Jay Flaten, Thomas L. Zimney, Zimney Foster Johnson Dittus & Flaten, Grand Forks, ND, for Defendant.

## MEMORANDUM AND ORDER

HOVLAND, Chief Judge.

Before the Court is Defendant Strata Corporation's Motion for Summary Judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons outlined below, the motion is granted in part and denied in part.

## I. BACKGROUND OF THE CASE

Strata Corporation is a North Dakota corporation engaged in the business of supplying aggregate products and concrete to customers in North Dakota.

The plaintiff, Ken Davis, is an enrolled member of the Turtle Mountain Band of Chippewa Indians ["Tribe"]. Davis lives on the Turtle Mountain Indian Reservation ["Reservation"] and is the owner of a convenience store located on the Reservation known as "LaDots".

Strata Corporation operated facilities in Dunseith, Cando, Rugby and Devils Lake. These four facilities comprised its Devils Lake region. All four facilities are now closed. The Dunseith facility was located near the Reservation and Strata Corporation regularly delivered concrete products to sites on the Reservation. The Tribe was one of Strata's customers. The undisputed evidence reveals that collection efforts on the Tribe's debt were difficult. By the fall of 2000, the Tribe owed Strata Corporation approximately $55,000. Frustrated by the Tribe's refusal to pay, upper management of Strata Corporation decided to institute a new credit policy.

The new credit policy provided that the delivery of concrete, aggregate, and other construction materials within the exterior boundaries of the Reservation would be done on a cash basis only. No credit would be extended by Strata Corporation.

On or about September 15, 2000, a letter was sent to Strata Corporation's customers and the Tribe advising them of the new credit policy. The letter provided as follows:

September 15, 2000

Richard Laframboise

Chairman

Turtle MT. Band of Chippewa Indians

Box 620

Belcourt, ND 58316

Dear Richard:

Due to the age of the past due accounts with Strata Corporation we will be suspending all future charge sales within the Reservation Boundaries as of Thursday, September 21, 2000.

All materials provided by: Strata/Bradshaw Gravel, Strata Concrete, or Strata Block & Masonry to any agency or any private individual will have to be Cash Before Delivery, meaning Cash or Certified Check will have to be delivered to our local office prior to our delivery. This policy will remain in effect until such time that all accounts are back in current status. I have enclosed statements of accounts that will have to be taken care of. If you have any questions please feel free to call me at your convenience (701) 739–0568.

Sincerely Yours,

/s/

Darrell Christianson

Region Manager

Strata Corporation

Davis was one of the customers who received a copy of the September 15th letter. Davis occasionally did business with Strata Corporation for his own personal needs and for the business needs of LaDots prior to the new credit policy. Davis asserts that he would have contin-

ued that practice after the new credit policy was adopted but could not.

Davis argues that the new credit policy implemented by Strata Corporation constitutes a form of race discrimination. He points out that the vast majority of the people living on the Reservation are Native Americans who were treated differently than persons living off the Reservation who are predominantly white. Strata Corporation maintains that the new credit policy was color blind and that it applied equally to all persons on the Reservation. Strata maintains that it continued to extend credit to American Indian customers for work being done outside the Reservation and that no other Indian reservations were affected by the new policy. Strata contends that there were legitimate, nondiscriminatory, business reasons which justified the need for a new credit policy on the Reservation.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. If the moving party has supported its motion for summary judgment, the nonmoving party has an affirmative burden placed on it to go beyond the pleadings and show a genuine triable issue of fact. *Commercial Union Ins. Co. v. Schmidt,* 967 F.2d 270, 271 (8th Cir.1992). However, the Court considering a motion for summary judgment must view the evidence in the light most favorable to the nonmoving party who en-

joys "the benefit of all reasonable inferences to be drawn from the facts." *Vacca v. Viacom Broadcasting of Missouri, Inc., et al.,* 875 F.2d 1337, 1339 (8th Cir.1989) (citation omitted).

Summary judgment is improper if the Court finds a genuine issue of material fact; however, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Schmidt,* 967 F.2d at 271–72 (citation omitted). The issue is whether "the evidence is sufficient to allow a reasonable jury to return a verdict for the nonmoving party." *Landon v. Northwest Airlines, Inc.,* 72 F.3d 620, 624 (8th Cir. 1995).

In his complaint, Davis alleges five (5) separate claims for relief. Davis is essentially contending that Strata Corporation's new credit policy, whereby deliveries of construction materials to the Reservation were on a "cash basis" only, constitutes a form of racial discrimination prohibited by the Fair Housing Act, 42 U.S.C. § 3601 et. seq.; the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et. seq.; 42 U.S.C. § 1981; 42 U.S.C. § 1982; and 42 U.S.C. § 2000 et. seq.

## III. LEGAL DISCUSSION

### A) FAIR HOUSING ACT 42 U.S.C. § 3601 et. seq.

Davis' first claim for relief alleges a violation of the Fair Housing Act, 42 U.S.C. § 3601, et. seq. See Complaint, ¶¶ 20–24. The Fair Housing Act was designed to prohibit discrimination in the sale, rental, financing, or brokerage of private housing and to provide federal enforcement procedures for remedying such discrimination. *Otero v. New York City Housing Authority,* 484 F.2d 1122, 1133 (2nd Cir.1973). The Act was adopted to prohibit a wide variety of discriminatory

housing practices ranging from a discriminatory refusal to rent or sell on the basis of race, to discrimination in the terms and conditions of housing. *Id.*

The Fair Housing Act specifically prohibits discrimination in the sale or rental of a "dwelling" and in "residential real estate-related transactions." 42 U.S.C. § § 3604, 3605. The Act defines a "dwelling" as any building or structure which is occupied as or designed or intended for occupancy as a residence. 42 U.S.C. § 3602(b). The term "residential real estate-related transaction" is defined as the "making or purchasing of loans or providing other financial assistance ... for purchasing, constructing, improving, repairing, or maintaining a dwelling." 42 U.S.C. § 3605(b)(1).

■ In order to establish a prima facie case of racial discrimination in violation of the Fair Housing Act, a plaintiff needs to prove that 1) he is a member of a protected class; 2) he sought and was qualified to sell, rent, finance, or broker private housing or a "dwelling"; 3) he was denied an opportunity to do so; and 4) others similarly situated with similar qualifications were treated differently. See *Keeney v. Kemper Nat. Ins. Cos.*, 960 F.Supp. 617, 620 (E.D.N.Y.1997). See also *Rowe v. Union Planters Bank of Southeast Missouri*, 289 F.3d 533, 535 (8th Cir.2002).

Strata Corporation contends that Davis' lawsuit is based exclusively on improvement work that was done to a commercial gas station and not a "dwelling" or private residence as required by the Fair Housing Act. See Strata's Brief in Support of Motion for Summary Judgment, p. 7. Strata argues that Davis' convenience store does not constitute a "dwelling" for purposes of the Fair Housing Act and that the Act does not extend to commercial real estate. Counsel for Davis argues that the September 15, 2000, letter from Strata Corporation constitutes a discriminatory credit policy that affects housing and triggers the anti-discriminatory provisions for residential real estate-related transactions under 42 U.S.C. § 3605.

■ The Fair Housing Act only applies to the "making or purchasing of loans or providing other financial assistance ... for purchasing, constructing, improving, repairing, or maintaining a dwelling." 42 U.S.C. § 3605(b)(1)(A). Even viewing the evidence in a light most favorable to the nonmoving party (Davis), there are simply no facts or evidence presented to show that 1) Strata Corporation was an entity whose business operations included "engaging in residential real estate-related transactions"; 2) that Strata Corporation discriminated against Davis in connection with a "residential real estate-related transaction" or in connection with a sale or rental of a "dwelling"; or 3) that Davis ever attempted to engage in any form of a real estate-related transaction with Strata Corporation as those terms are defined by the Act. The facts and the evidence presented clearly reveal that this is not the type of case or claim that falls under the anti-discriminatory provisions of the Fair Housing Act. Davis has failed to present any evidence that he has standing to assert a claim under the Fair Housing Act or that the allegations raised in his complaint, or in response to the motion for summary judgment, even remotely establish the essential elements of a prima facie case of race discrimination under the Fair Housing Act. Even viewing the evidence in a light most favorable to the nonmoving party, there is insufficient evidence at best to allow a reasonable jury to return a verdict for the nonmoving party on this claim.

The Court concludes as a matter of law that the plaintiff has failed to present a scintilla of evidence to establish the essential elements of a prima facie case of race

discrimination under the Fair Housing Act. As such, the claim is dismissed.

### B) 42 U.S.C. § 2000d

The plaintiff has alleged a violation of 42 U.S.C. § 2000d et. seq. See Complaint, ¶¶ 37–41. This statutory provision provides as follows:

Prohibition against exclusion from participation in, denial of benefits of, and discrimination under Federally assisted programs on ground of race, color, or national origin.

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

■ In essence, 42 U.S.C. § 2000d prohibits discrimination under any program or activity receiving federal financial assistance. In this case, there is a complete absence of any evidence that Strata Corporation received federal financial assistance or that the corporation excluded or denied Davis any benefits of federal financial assistance in any program or activity. Further, Davis has failed to submit any legal argument(s) in his responsive brief to the Court to address this claim, and has failed to present a scintilla of evidence to establish any disputed factual issues or any legal argument in support of the proposition that this is a legitimate claim for consideration by the jury. It is incumbent upon the plaintiff to affirmatively set forth facts to demonstrate that there is a genuine issue for trial. The plaintiff has wholly failed to present any evidence which would create a genuine triable issue of fact. Even viewing the evidence in a light most favorable to the nonmoving party, there has been no evidence presented to allow a reasonable jury to return a verdict for the nonmoving party on this particular claim. Therefore, the Court concludes as a matter of law that the claim for relief under 42 U.S.C. § 2000(d) et. seq., is devoid of merit and warrants dismissal.

### C) 42 U.S.C. § 1982

42 U.S.C. § 1982 provides as follows:

All citizens of the United States shall have the same right, in every state and territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

In this case, Davis was the owner and operator of a convenience store located on the Reservation known as "LaDots". This was a commercial business which operated as a gasoline/ convenience store, lounge and off-sale, and a laundry facility. In the spring of 2001, Davis began construction of a motor vehicle wash facility. This construction required the purchase of concrete and aggregate materials. Davis, a partner in "LaDots", made the decision to purchase concrete and aggregate products from vendors other than Strata Corporation and this was done in April–May 2001. Davis contends in part that this decision was made due to Strata Corporation's new credit policy.

■ Even viewing the evidence in a light most favorable to the nonmoving party (Davis), there are no genuine issues of material fact in dispute relative to this claim. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Davis has failed to present any evidence or any legal argument(s) to establish the existence of the essential elements of a prima facie claim for relief under 42 U.S.C. § 1982. Davis also failed to address this legal claim in his responsive brief or to present any evidence that creates a genuine triable issue of fact. There has been no evidence presented that would be sufficient to allow a reasonable

jury to return a verdict for Davis on this claim. As such, the Court concludes that the claim should be dismissed as a matter of law.

D) 42 U.S.C. § 1981

The plaintiff has also alleged a claim for relief pursuant to 42 U.S.C. § 1981. See Complaint, ¶¶ 25–28. 42 U.S.C. § 1981 was derived from the Civil Rights Act of 1866 and generally prohibits racial discrimination in the making of all private and public contracts. The statute reads as follows:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law

42 U.S.C. § 1981 is a constitutional exercise of the power of Congress to enact appropriate legislation that enumerates the rights guaranteed by the Constitution. 42 U.S.C. § 1981 protects against discrimination on the basis of race. The Eighth Circuit has held that 42 U.S.C. § 1981 is applicable to private actions for discrimination based on race. *Windsor v. Bethesda General Hospital,* 523 F.2d 891, 893 (8th Cir.1975); see *Shannon v. Ford Motor Co.,* 72 F.3d 678 (8th Cir.1996).

Strata Corporation has made only a cursory argument challenging Davis' cause of action under 42 U.S.C. § 1981. Strata contends, without any supporting citation, that 42 U.S.C. § 1981 does not apply to Native Americans. However, it is clear that Congress intended that 42 U.S.C. § 1981 was to protect identifiable classes of persons based on race. This statute guarantees equal rights under the law and forbids all racial discrimination in the making of private and public contracts. It obligates commercial enterprises to extend the same treatment to contractual customers regardless of race. Under 42 U.S.C. § 1981, the plaintiff must prove intentional discrimination on the part of the defendant. The United States Supreme Court has clearly recognized that liability cannot be imposed under 42 U.S.C. § 1981 without proof of intentional or purposeful discrimination. *General Building Contractors Ass'n, Inc., v. Pennsylvania,* 458 U.S. 375, 382, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982).

This Court, relying upon the reasoning of the *United States Supreme Court in Saint Francis College v. Al–Khazraji,* 481 U.S. 604, 613, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987), and subsequent cases of a similar nature, concludes that Native Americans constitute a class of identifiable persons whom 42 U.S.C. § 1981 was clearly intended to protect. The pleadings, depositions, and other evidence in the record demonstrate that there are genuine issues of material fact and that a reasonable jury could return a verdict for the nonmoving party (Davis) on this claim, particularly in light of the September 15, 2000, letter from Strata Corpo-

ration. The motion to dismiss the plaintiff's claim brought under 42 U.S.C. § 1981 is denied.

### E) EQUAL CREDIT OPPORTUNITY ACT, 15 U.S.C. § 1691 et. seq.

Finally, in Davis' fourth claim for relief, he alleges a violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691–1691(f). The Equal Credit Opportunity Act prohibits discrimination in credit transactions. Specifically, the Act prohibits racial discrimination on the part of any creditor with respect to any aspect of a credit transaction. 15 U.S.C. § 1691(a). 15 U.S.C. § 1691(a)(1) provides that, "It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of credit transaction ... on the basis of race". The purpose of the Equal Credit Opportunity Act is to eradicate discrimination on the basis of race, color, religion, national origin, sex or marital status, or age. The Act specifically prohibits racial discrimination in any aspect of a credit transaction. See *Cherry v. Amoco Oil Co.*, 481 F.Supp. 727, 730 (N.D.Ga. 1979).

■ Under the Equal Credit Opportunity Act, the term "applicant" means "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit". 15 U.S.C. § 1691a(b). The term "creditor" means any person who regularly extends, renews, or continues credit, etc. 15 U.S.C. § 1691e(a). Any creditor who fails to comply with the Act shall be liable to the aggrieved applicant for any actual damages sustained by such applicant. 15 U.S.C. § 1691e(a). In addition, any creditor who fails to comply with the Act shall be liable to the aggrieved applicant for punitive damages not greater than $10,000. 15 U.S.C. § 1691e(b). It is well-established that a jury trial is required in an action brought under the *Equal Credit Opportunity Act. Vander Missen v. Kellogg Citizens National Bank of Green Bay*, 83 F.R.D. 206 (E.D.Wis. 1979).[1]

■ To establish a prima facie case of discrimination under the Equal Credit Opportunity Act, the plaintiff must demonstrate that 1) he was a member of a protected class; 2) he applied for and was qualified for an extension of credit; 3) the extension of credit was rejected despite his qualifications; and 4) others of similar credit stature were extended credit or given more favorable treatment than the plaintiff. See *Rowe v. Union Planters Bank of Southeast Missouri*, 289 F.3d 533, 535 (8th Cir.2002).

■ Viewing the evidence in a light most favorable to the plaintiff, the Court concludes that Davis has presented evidence from which a jury could reasonably conclude that he has established a prima facie claim of discrimination under the Equal Credit Opportunity Act. At a minimum, the nonmoving party (Davis) has set forth facts that demonstrate that there is a genuine issue for trial. The plaintiff has presented facts which reasonably infer that 1) he was a member of a protected class; 2) Strata Corporation's new credit policy denied credit to all Native Americans who resided on the Turtle Mountain Indian Reservation; 3) the letter of September 15, 2000, arguably equates with a

---

**1.** Neither the Court nor the jury can presume any injury and actual damages must be specifically proven and established at trial. *Anderson v. United Finance Co.*, 666 F.2d 1274 (9th Cir.1982). As a general rule, the actual damages available under the Equal Credit Opportunity Act include out-of-pocket monetary losses, injury to credit reputation, and mental anguish, humiliation, or embarrassment. *Id.*

pre-emptive denial of any credit to Davis because the evidence shows that Davis had been qualified before September 15, 2000, to purchase on credit from Strata Corporation and that he was still qualified after September 15th, but for his race and place of residence; and 4) Strata Corporation continued to provide credit to customers, both white and Indian, who lived off of the Turtle Mountain Indian Reservation and who had similar qualifications as Davis. There are also factual issues in dispute as to whether Davis was an "applicant" as that term is defined in 15 U.S.C. § 1691a(b) because the record is unclear in that regard. In other words, viewing the evidence in a light most favorable to the plaintiff, and giving the plaintiff the benefit of all reasonable inferences to be drawn, the Court concludes that the plaintiff has presented evidence of some genuine triable issues of fact. As a result, a summary judgment of dismissal would be inappropriate at this time.

## IV. CONCLUSION

The Court has concluded as follows:

1) The plaintiff's claim for relief under the Fair Housing Act is dismissed and summary judgment is granted as to that particular claim. There are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law on all claims asserted under the Fair Housing Act. There are no factual issues in dispute nor is there a legal basis to support a claim under the Act.

2) The plaintiff's claim for relief under 42 U.S.C. § 2000d is dismissed and summary judgment as a matter of law is granted. There are clearly no factual issues in dispute as to this claim. More important, the plaintiff has wholly failed to present any facts or any legal arguments to support a claim for relief under 42 U.S.C. § 2000d. As such, summary judgment of dismissal as a matter of law is appropriate as to this claim.

3) The plaintiff's claim for relief under 42 U.S.C. § 1982 is also devoid of merit and shall be dismissed. The plaintiff has wholly failed to present any disputed facts, evidence, or legal arguments to support the claim brought pursuant to 42 U.S.C. § 1982. As such, summary judgment of dismissal of this claim is warranted.

4) The plaintiff's remaining claims under the Equal Credit Opportunity Act 15 U.S.C. § 1691 et. seq., and 42 U.S.C. § 1981 are ripe for resolution by a jury. These two claims do not warrant dismissal by the Court at this stage of the litigation. The plaintiff has presented facts which, when viewed in a light most favorable to the nonmoving party, establish that there are genuine issues of material fact to be resolved by the jury. The plaintiff has presented sufficient evidence at this stage of the litigation to overcome summary judgment of dismissal as a matter of law.

In summary, the gist of the claims being asserted by the plaintiff, Ken Davis, against the defendant, Strata Corporation, are that the credit policy of the corporation adopted on September 15, 2000, and effective as of September 21, 2000, constitutes a form of race discrimination prohibited by 42 U.S.C. § 1981 and the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et. seq. There are factual issues to be resolved by the jury concerning the application of these two statutory provisions to the facts of this case.

Under either legal theory or claim, it is still incumbent upon the plaintiff to prove and establish at trial the essential elements of a prima facie case of discrimination under the standards and method of analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct.

1817, 36 L.Ed.2d 668 (1973). The proof and burden-shifting framework established in McDonnell Douglas governs the evaluation of the evidence and bears on the critical question of discrimination. The Eighth Circuit has recognized that there is nothing magical about the three-stage analysis or framework of McDonnell Douglas. Simply stated, the McDonnell Douglas three-step process is a sensible, helpful tool or process to decide whether or not alleged discrimination has occurred. *Shannon v. Ford Motor Co.,* 72 F.3d 678, 682 (8th Cir.1996). Therefore, that process will govern at trial. Further, it is also incumbent upon the plaintiff to prove and establish at trial that there was the necessary discriminatory animus or intent on the part of the defendant with resulting damage causally related to the discriminatory conduct.

SO ORDERED.